IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT CRAMER**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:10-CV-1428-L** |
| | § | |
| **NEC CORPORATION OF AMERICA and REDRIVER SYSTEMS, L.L.C.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant RedRiver Systems, L.L.C.'s Motion for Final Summary Judgment, filed August 30, 2010. After carefully considering the motion, response, reply, and applicable law, the court **grants** Defendant's Motion for Final Summary Judgment.

### I. Factual and Procedural Background

On July 20, 2010, Plaintiff Albert Cramer ("Cramer" or "Plaintiff") filed his Original Complaint against Defendants NEC Corporation of America ("NEC") and RedRiver Systems, L.L.C. ("RedRiver"). Cramer, who is 65 years old, contends that NEC and RedRiver violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by replacing him with a younger, less experienced, and less qualified individual. RedRiver contends that it did not discriminate against Cramer because of his age, that it never employed Cramer, and that it never had any input, control, or authority, directly or indirectly, with respect to his job status.

Defendant RedRiver is a staffing firm that "assists its clients by designing and building solutions to meet their needs with custom software development and/or a tailored staffing approach

for full time and contract resources." Def.'s App. at 0001. On January 29, 2007, RedRiver began to provide staffing services directly to one of its clients, 7-Eleven, Inc. ("7-Eleven"). *Id.* at 0002. On August 1, 2008, 7-Eleven introduced RedRiver to representatives of NEC, which also provided 7-Eleven with custom software development employees. *Id.* 7-Eleven indicated to NEC that as 7-Eleven began to outsource more of their software development initiatives to NEC, RedRiver's breadth of knowledge and experience could be an asset to NEC. As of August 2010, RedRiver provides candidates to NEC to provide specific technical, business operations, or administrative tasks. *Id.* at 2. NEC then assigns the RedRiver candidates to specific job sites such as 7-Eleven for full time or contract employment. In this regard, NEC has the right of final acceptance or rejection of any RedRiver candidate submitted for consideration. *Id.*

Cramer worked in the 7-Eleven War Room for approximately eleven years.[*] His responsibilities included information technology ("IT") installations in new stores and maintaining IT projects in existing stores. Pl.'s Orig. Compl. at 2. Toward the end of 2009, 7-Eleven announced that NEC was going to assume control over 7-Eleven's IT department and that Cramer was included in the transition. Plaintiff contends that he was "told at the time [of the transition] that there was a job for him with NEC." *Id.* Following the transition, Cramer was discharged from employment with 7-Eleven. NEC later hired a 27-year old male, Kevin Zvolnak. *Id.*

Defendant RedRiver contends that Plaintiff cannot establish RedRiver's liability under the ADEA because it was not Cramer's employer within the meaning of the ADEA and thus was not in the position to take any adverse employment action against Cramer. Defendant contends that

---

[*]The parties have not presented the court with an exact time line of the events in question, particularly with regard to Cramer's hiring and termination, and the court was unable to find the information after a diligent search. The failure to submit key temporal information to the court resulted in a waste of scarce judicial resources.

**Memorandum Opinion and Order- Page 2**

Plaintiff was never employed by RedRiver. Defendant further contends that it never had any input, control, or authority, whether directly or indirectly, regarding Cramer's job status with 7-Eleven. Cramer responds that RedRiver is liable under the ADEA because RedRiver and NEC are joint employers and thus responsible for his unlawful discharge.

## II. Legal Standard for Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment

evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

Plaintiff contends that Defendant violated the ADEA by discharging him on account of his age and replacing him with a younger, less experienced, and less qualified individual. Defendant moved for summary judgment, arguing that it never employed Cramer and thus has no liability under the ADEA. Plaintiff responds that RedRiver is liable under the ADEA because RedRiver and NEC are joint employers and therefore responsible for his unlawful discharge. The ultimate question that the court must decide is whether RedRiver was Cramer's employer under the ADEA and, if so,

whether it faces liability under the ADEA. The court begins its analysis by reviewing the scope of the ADEA and a discussion into the employer/employee relationship required for imposition of ADEA liability.

The "primary purpose of the ADEA is to prohibit arbitrary age discrimination in employment." *Coleman v. New Orleans and Baton Rouge S.S. Pilots' Ass'n,* 437 F.3d 471, 478 (5th Cir. 2006) (citing 29 U.S.C. § 621(b)). To accomplish this objective, "the ADEA prohibits certain practices by employers, employment agencies, and labor organizations." *Coleman,* 437 F.3d at 478 (citing 29 U.S.C. § 623 (a)-(c)). "In relevant part, the ADEA makes it unlawful for an employer to otherwise fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.'" *Coleman,* 437 F.3d at 478 (quoting 29 U.S.C. § 623(a)(1)). To establish a prima facie case of employment discrimination under the ADEA for discharge, Plaintiff must establish that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

To determine "whether an employment relationship exists within the meaning of the . . . ADEA, [the Fifth Circuit applies] a hybrid economic realities/common law control test." *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas,* 5 F.3d 117, 118-19 (5th Cir. 1993) (internal quotation marks and citations omitted). "The right to control an employee's conduct is the most important component of this test." *Id.* (internal citations omitted). "When examining the control component,

[the Fifth Circuit] ha[s] focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* (citations omitted) "The economic realities component of [this] test [focuses] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citations omitted)

RedRiver presents evidence that it never employed Cramer. RedRiver further contends that Cramer never had a business or personal relationship with RedRiver other than as an individual who worked as a contractor for 7-Eleven on a project where RedRiver personnel were also working. RedRiver presents evidence that it "never represented or communicated with Albert Cramer in any way regarding his potential for a job with 7-Eleven or NEC." Def.'s App. at 0003. Stated simply, RedRiver contends that Cramer has no evidence that it took an adverse employment action against him and thus fails to prove a prima facie case of age discrimination under the ADEA.

Plaintiff responds that multiple genuine issues of material fact remain as to whether Defendants RedRiver and NEC are joint employers. Plaintiff contends that Fifth Circuit case law concerning joint employment dictates that RedRiver and NEC were joint employers with respect to Zvolanek. Further, Plaintiff responds that the summary judgment evidence establishes that Zvolanek is an employee of RedRiver.

Defendant replies that Cramer's summary judgment response is merely a joint employer smokescreen and fails to address the fundamental question raised by Defendant. Defendant also replies that Cramer incorrectly focuses on whether RedRiver and NEC are joint employers of Zvolanek, rather than raising fact issues as to Cramer's employment. Defendant contends further that it is merely one of several staffing agencies supplying personnel to NEC. Defendant contends

that NEC had the sole authority to accept RedRiver's candidates. In this regard, Defendant points out that Cramer never applied to work for RedRiver. Def.'s App. at 0002. Defendant further posits that RedRiver never had any input, control, or authority, whether directly or indirectly, regarding Cramer's job status with 7-Eleven. *Id.* Defendant presents evidence that RedRiver had no input as to whether Albert Cramer would be considered for employment by NEC. In short, RedRiver contends that it was not Cramer's employer and thus it cannot be held liable for age discrimination under the ADEA.

After reviewing the parties' contentions, summary judgment evidence, and applicable law, the court determines that RedRiver was not Cramer's "employer" within the meaning of the ADEA and, consequently, it has no ADEA liability to Cramer. RedRiver had no right to control Cramer's conduct. RedRiver presents unrebutted evidence that it did not have the right to hire and fire Cramer. Cramer never applied to work for RedRiver. Furthermore, RedRiver did not have the ability to supervise Cramer or set his work schedule. RedRiver did not have any input, control or authority, whether directly or indirectly, regarding Cramer's job status. Plaintiff has not presented any evidence to the contrary, and, given that RedRiver never employed Cramer, the court cannot accept the argument that RedRiver controlled any aspect of Cramer's employment. It is patently untenable to conclude that someone *other* than the employer could potentially discharge an employee from employment.

Furthermore, the economic realties of Cramer's relationship with RedRiver do not demonstrate an employer/employee relationship within the meaning of the ADEA. Cramer has produced no evidence that RedRiver paid his wages, withheld his taxes, provided benefits to him, or set the terms and conditions of his employment. Defendant contends that "Cramer had no

business or personal relationship with RedRiver other than [that] as an individual who worked as a contractor for 7-Eleven on a project where [its] personnel were also working in support of 7-Eleven." Def.'s App. at 0002. The economic realities of Cramer's relationship with RedRiver do not establish, or raise a genuine issue of material fact, that an employer/employee relationship existed.

The court concludes that RedRiver did not control Cramer, and the economic realities of his relationship with Defendant do not establish, or raise a fact question, that an employer/employee relationship existed. Since RedRiver did not discharged him, Plaintiff fails to establish the first element of a prima facie ADEA claim. Accordingly, Plaintiff's ADEA claim against RedRiver fails as a matter of law, and no genuine issue of material fact exists as to Plaintiff's claim.

Alternatively, the court finds Plaintiff's response to be unavailing and largely immaterial to Defendant's summary judgment contentions. Plaintiff places undue emphasis on the joint employer doctrine. Plaintiff asserts that NEC and RedRiver were joint employers and thus both are liable under the ADEA. Plaintiff urges the court to rely upon *Boutin v. Exxon Mobile Corp.,* 730 F.Supp.2d 660 (S.D. Tex. 2010). In *Boutin*, the court identified five factors that should be weighed to determine: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.* at 680 (citing *AT&T v. NLRB*, 67 F.3d 446 (2d Cir.1995)). Assuming that *Boutin* correctly sets forth the joint employer standard in ADEA cases, Plaintiff fails to raise a genuine issue of material fact as to these matters. Nothing in the record establishes, or raises a fact question, that RedRiver could order or tell NEC whom to hire, fire, or discipline; that RedRiver disciplined or supervised Cramer; or that RedRiver paid any wages, benefits, or compensation to Cramer. Further,

the record is devoid of any evidence as to how RedRiver and NEC dealt with the collective bargaining process. In his response, Cramer focuses solely on Zvolanek's employment with RedRiver and NEC. Zvolanek's employment status with RedRiver, however, is quite beside the point. Had this suit been brought by Zvolanek, Plaintiff's response might have merit; however, the suit was brought by Cramer. Further, even if Plaintiff did address joint employment with respect to Cramer, Plaintiff fails to rebut *any* of Defendant's summary judgment evidence. Plaintiff has failed to carry its burden by establishing the existence of a genuine issue of material fact. Accordingly, Defendant's is entitled to judgment as a matter of law.

## IV. Conclusion

For the reasons stated herein, the court determines that no genuine issues of material fact exist as to Plaintiff's claims under the Age Discrimination in Employment Act against RedRiver. Accordingly, the court **grants** Defendant RedRiver Systems, L.L.C.'s Motion for Final Summary Judgment. The court **dismisses with prejudice** Plaintiff's claim for violation of the Age Discrimination in Employment Act with respect to Defendant RedRiver. Accordingly, Defendant NEC Corporation of America remains as a Defendant in this action.

**It is so ordered** this 13th day of June, 2011.

_____
Sam A. Lindsay
United States District Judge